IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

                       Plaintiff,

   v.

ISC, INC., d/b/a INSURANCE SERVICE CENTER, and
THE ESTATE OF LOREN W. HOLZHUETER,          OPINION & ORDER

                   Defendants,                          15-cv-45-jdp

   and

HONEFI, LLC, ARLENE HOLZHUETER, and
AARON HOLZHUETER,

                   Relief Defendants.

---

      This case is in its final stages, and five motions are before the court. First, plaintiff the United States Securities and Exchange Commission, defendant the Estate of Loren W. Holzhueter, and relief defendants Honefi, LLC and Arlene Holzhueter have moved for entry of consent and final judgments against the Estate, Honefi, and Arlene Holzhueter. Dkt. 145. Second, defendants' counsel, Kravit, Hovel & Krawczyk, S.C. (KHK), has moved for accrued, unpaid attorney fees and costs, to be paid from the funds the court currently holds in its registry. Dkt. 151. Third, the SEC has moved the court to appoint a receiver to oversee a two-phase distribution of assets to the defrauded investors. Dkt. 159. Fourth, the state court plaintiffs have moved to intervene. Dkt. 163. And finally, the SEC, defendants, and relief defendants have moved to temporarily stay six related state-court actions, until the court has the opportunity to rule on all pending motions. Dkt. 186.

The parties largely agree that a receiver should oversee the distribution of assets to the investors. But the court must decide two issues that will affect the receivership. Over the SEC's objection, the court will allow defendants' attorneys to recover a portion of their unpaid attorney fees and costs during phase I of the distribution proceedings. And because the state court plaintiffs will have the opportunity to be heard during the distribution proceedings, the court will deny their motion to intervene. The court will also stay the pending state-court cases. With these outstanding objections resolved, the court will enter the unopposed consent judgments and a receivership order, which the court has modified to reflect the decisions made in this order.

RELEVANT BACKGROUND

The SEC initiated this enforcement action against Loren W. Holzhueter and ISC, Inc. on January 21, 2015. Dkt. 1. On January 28, 2015, the court entered a temporary restraining order (TRO) against defendants. Dkt. 20. The TRO remains in effect and provides, in relevant part, that "defendants and each of their officers, agents, servants, employees, and those persons in active concert or participation with them . . . are hereby prohibited from . . . making any interest or principal payments to investors, pending the resolution of this action or further order of this court." *Id.* at 3-4. The TRO froze defendants' assets. *Id.* at 4-5.

On November 2, 2015, the court granted the parties' joint motion for entry of partial judgment against defendants and entered consent judgments against ISC and the Estate of Loren W. Holzhueter. Dkts. 79-81. The consent judgments provide, in relevant part, that defendants will "pay disgorgement of ill-gotten gains and prejudgment interest thereon; that the amounts of the disgorgement and civil penalty [ISC only] shall be determined by the

Court upon motion of the Commission; and that the prejudgment interest shall be calculated from the date the ill-gotten gain was obtained[.]" Dkt. 80, at 3 and Dkt. 81, at 1. Neither defendant admitted or denied the allegations at issue.

On November 18, 2015, the court granted the parties' joint motion to deposit Loren W. Holzhueter's life insurance proceeds with the court. Dkt. 86. The assets remain frozen and will be available to "satisfy any agreement reached by the parties to this case or any remedy ordered by the Court." *Id.* at 3.

On June 20, 2016, the parties filed an unopposed motion for entry of consent and final judgments against the Estate and relief defendants Honefi, LLC and Arlene Holzhueter. Dkt. 145. Relief defendant Aaron Holzhueter has also agreed to resolve the SEC's claims against him by voluntarily consenting to entry of judgment, but those terms are subject to approval by the bankruptcy court in Holzhueter's Chapter 11 case, No. 16-13134 (Bankr. W.D. Wis. filed Sept. 12, 2016). Dkt. 145 and Dkt. 182. These parties have agreed to satisfy their disgorgement obligations by relinquishing to the SEC: (1) the life insurance proceeds currently held in the court's registry; and (2) ownership and other interests in ISC and Honefi. Upon entry of these consent judgments, the SEC will commence the distribution phase of this case.

The SEC intends to distribute defendants' ill-gotten gains in two phases, via receiver. First, the receiver will distribute the life insurance proceeds and other liquid assets to injured investors, *pro rata* based on net principal loss (i.e., the total amount invested less any repayments the investor received). Second, the receiver will distribute the proceeds from any sale of ISC, Honefi, or their assets to all remaining creditors. The SEC believes that a third-party receiver will be best equipped to oversee the sale of ISC, Honefi, and their assets and,

in the interim, oversee operations to preserve their value. The SEC envisions that the receiver would serve several roles:

> (1) maintaining custody of all Disgorgement Funds prior to the final distribution . . . ; (2) drafting and submitting Distribution Plans for the Preliminary and Secondary Distributions; (3) overseeing the notice and claims process, including by assessing the validity of any disputed claims and determining the appropriate amount a claimant should receive . . . ; (4) serving as Receiver over ISC and Honefi for the purpose of completing arm's length sales of those entities, and/or their assets for the benefit of investors (and creditors); (4) [sic] entering into a consent judgment on behalf of ISC that would be satisfied upon termination of the receivership[;] and (5) to the extent necessary, authorizing the retention of professionals to meet any tax reporting requirements concerning the distribution.

Dkt. 148, at 5-6.

ANALYSIS

As this case enters its distribution phase, the parties are, for the most part, on the same page. All agree that the court should enter the proposed consent judgments against the Estate, Honefi, and Arlene Holzhueter. The court will enter those judgments shortly. And it appears that all agree that the court should appoint a third-party receiver to oversee the next steps. But before the court enters its order appointing a receiver, it must address whether defendants' counsel, Kravit, Hovel & Krawczyk, S.C. (KHK), may collect unpaid attorney fees and costs during phase I of the distribution proceedings, and whether the state court plaintiffs may intervene in this case.

A. KHK's motion for attorney fees and costs

During most of this litigation, KHK's bills have been paid by ISC, subject to the approval of David Omachinski, the independent monitor that the court appointed to oversee

4

ISC's operations. But, in Mr. Omachinski's judgment, ISC does not have the resources to continue paying KHK's bills, and it will not be able to do so in the foreseeable future. KHK's total fees and costs have been approximately $850,000; it has been paid $376,557.83, leaving a current unpaid balance of approximately $479,000.

KHK asks the court to order payment of the unpaid balance during phase I, which is to say from the insurance proceeds and other liquid assets now held for the benefit of the defrauded investors. The SEC does not object to the amount of KHK's fees or to the quality and necessity of KHK's work. But the SEC objects to KHK being paid in phase I, where the $9.75 million is enough to pay the investors only about 66 cents on the dollar of their net principal contribution.

KHK's motion presents a difficult question. There is no decisive precedent, and the parties present starkly divergent theories. According to the SEC, KHK stands as an ordinary creditor to ISC, and it ought to be paid only after the defrauded investors are made whole, which will be only in phase II, if at all. But KHK contends that it has served a role analogous to counsel to the debtor in a bankruptcy, and so its claim for payment should be evaluated under the framework for paying professionals under the Bankruptcy Code. Alternatively, KHK contends that it is like plaintiff's counsel in a class action, and that it is entitled to claim a portion of the recovery fund because it helped create the fund. The bottom line is that KHK is asking to get paid in full first.

Courts have broad discretion in supervising an equitable distribution of assets in SEC enforcement actions. *See, e.g., SEC v. Wealth Mgmt, LLC*, 628 F.3d 323, 332-33 (7th Cir. 2010). "[T]he primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *Id.* at 332. In determining whether it is fair and

5

reasonable to pay KHK first, the court must reconcile two important, but competing, principles. On one hand, the fraudster ought not be allowed to use ill-gotten gains to pay his attorneys. *See S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime." (citations omitted)). Previous payments to KHK were from ISC's operations. But the funds held by the court are the proceeds of insurance policies paid for with money from the defrauded investors. So KHK is asking now to be paid from the proceeds of the fraud.

On the other hand, the court recognizes the importance of encouraging attorneys to represent those charged with fraud. KHK's primary objective has been to protect the defendants, but its representation here has also benefited the SEC, the court, and even the investors by helping to keep ISC up and running. The court is not persuaded that this case is analogous to a bankruptcy, because the "estate" here was procured by fraud, not mere economic misfortune. Nor is KHK really entitled to claim full credit for collecting the funds now held by the court. Nevertheless, to leave KHK completely unpaid would severely discourage attorneys from representing defendants in complex securities litigation.

To reconcile these principles, the court will not elevate KHK above the members of the defrauded investor class, but it will allow KHK to stand with them. Commensurate with the investor class's projected phase I recovery, KHK will recover only a *pro rata* share of its unpaid fees and expenses. The investor class stands to recover approximately 66 percent of their net principal losses. Accordingly, in phase I, KHK will recover about 66 percent of the total value of its representation to date. Note well that KHK has already been paid a portion of its fees; those payments will count against its *pro rata* share. (By the court's rough

calculation, this means that KHK will be paid approximately $188,000 in phase I.) This is one of those unfortunate cases in which a fair and reasonable plan of distribution leaves everyone short to some degree. KHK is entitled to its fees, but it will have to collect the remaining amounts due in phase II.

One final point: Mr. Omachinski has indicated that KHK has provided valuable services to ISC, but he has disavowed undertaking any review of the reasonableness of its fees. Dkt. 149. Accordingly, the court will expect the SEC and the receiver to carefully evaluate KHK's request for fees during the claim review process in phase I.

**B. State court plaintiffs' motion to intervene**

The court has allowed the state court plaintiffs limited opportunities to voice their concerns at various points in this case. But now the state court plaintiffs have moved to intervene in this case generally. The state court plaintiffs move to intervene for three reasons: (1) to oppose appointment of a receiver for the purpose of selling ISC; (2) to oppose distribution of attorney fees or costs to KHK from disgorged funds (i.e., phase I); and (3) to oppose any decisions by the receiver that would "impair [the state court plaintiffs'] claims and rights in the state-court proceedings." Dkt. 163, at 1.

The state court plaintiffs have submitted the same arguments to the court several times now: they do not want a receiver to sell or liquidate ISC, for fear that it may affect their ability to collect on their not-yet-secured state court judgments. They do not object to the appointment of a receiver in general, and they do not object to the SEC's proposed phase I. Rather, the state court plaintiffs are concerned that selling ISC "free of liens" will destroy their ability to collect against ISC. Dkt. 170, at 5. ("The SEC proposes nothing less than the total destruction of the state based entity that State Court Plaintiffs are pursuing.").

But the state court plaintiffs' objections are either premature, speculative, or both, at this point. The state court plaintiffs will have the opportunity to raise targeted objections to the receiver's proposed phase II plan soon enough.[1] Then, and only then, will the receiver have identified how he intends to proceed in phase II, including the details of any potential sale or liquidation of ISC. The proposed receivership order explicitly provides that the receiver will not have the authority to sell ISC without prior approval of the court. Until then, the state court plaintiffs' objections to a hypothetical sale are not appropriately before the court.

And, for these same reasons, the court will not allow the state court plaintiffs to intervene in this case generally. "[T]o intervene as of right, [the state court plaintiffs must] satisfy four requirements: (1) the application must be timely; (2) 'the applicant must claim an interest relating to the property or transaction which is the subject of the action'; (3) 'the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest'; and (4) 'existing parties must not be adequate representatives of the applicant's interest.'" *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003) (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000)). The state court plaintiffs have not demonstrated that they will be unable to protect their interests absent complete intervention. To the contrary, they will have the opportunity to make their arguments during receivership. The state court plaintiffs have not identified any reason for their involvement beyond that. The Seventh Circuit has held that intervention as of right is not available where the proposed

---

[1] The state court plaintiffs also objected to allowing KHK to recover fees during phase I. The court considered these arguments but found them unpersuasive.

intervenor may pursue its claim during receivership. *See Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984).

The court does not need to decide whether 15 U.S.C. § 78u(g) bars intervention. The state court plaintiffs have not demonstrated that they are entitled to intervene as of right because they will have the opportunity to assert their rights and objections during the receivership portion of this case.

## C. The SEC's motion for appointment of a receiver

That brings us to the main event: the SEC's motion for appointment of a receiver. Dkt. 159. The SEC moves the court to appoint Michael S. Polsky as receiver for purposes of "distributing the proceeds from the policies insuring Loren W. Holzhueter's life and selling Defendant ISC, Inc. and Relief Defendant Honefi LLC and distributing the proceeds of those sales." *Id.* at 1.

District courts enjoy broad equitable authority to appoint a receiver in SEC enforcement actions to protect assets for distribution. *See, e.g., SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The court agrees with the SEC's largely unchallenged assessment that the distribution phase in this case must be guided by equitable principles because it is unlikely that the available assets will cover all losses and claims by secured and unsecured creditors. A receiver would be in the best position to oversee a unified claims process.

All parties, and the state court plaintiffs, agree that the court should appoint a receiver. The court will, for the most part, adopt and enter the SEC's proposed receivership order. But the court has made two substantive amendments. First, the court will amend phase I to allow KHK to collect a portion of its unpaid fees as discussed above. Second, the court has added language on page 15 that expressly requires the receiver to consider in phase

II the prudence and viability of clawing back ISC's pre-suit payments to investors that exceeded those investors' principal contributions. No one objects to the SEC's selection of Mr. Polsky, and the record before the court indicates that Mr. Polsky is qualified for the task at hand.

In conjunction with the appointment of a receiver, the SEC, defendants, and relief defendants request that the court stay all related state court actions. Dkt. 160 and Dkt. 186. The court will grant this request. The court denied defendants' previous request to enjoin the state court actions, Dkt. 129, but since then, the landscape of this case and the state court actions has changed. In that previous order, the court noted that defendants needed to demonstrate that the requested injunction was "necessary in aid of [this court's] jurisdiction" or "to protect and effectuate its judgments." *Id.* at 4 (citing 28 U.S.C. § 2283). The court will not reproduce the applicable standard in full here; the court's previous analysis established that the requested stay must be *necessary* to this court's jurisdiction. *Id.* at 4-5. Now that it appears that the state court actions stand to interfere with the distribution phase, as the state court plaintiffs have picked up speed in their quest for a final judgment against ISC, the requested stay is now necessary. *See U.S. S.E.C. v. Wealth Mgmt. LLC,* No. 09-cv-506, 2009 WL 3269665, at *1 (E.D. Wis. Oct. 8, 2009) ("In this case, just as in a bankruptcy matter, a stay of ancillary litigation is necessary to permit an orderly and efficient liquidation and distribution of the estate for the benefit of all creditors and investors.").

### ORDER

IT IS ORDERED that:

1. Plaintiff the United States Securities and Exchange Commission's unopposed motion for entry of consent and final judgments against defendant the Estate of

Loren W. Holzhueter and relief defendants Honefi, LLC and Arlene Holzhueter, Dkt. 145, is GRANTED. The court will enter the consent judgments shortly.

2. Kravit, Hovel & Krawczyk, S.C.'s motion for payment of accrued, unpaid attorney fees and costs, Dkt. 151, is GRANTED in part and DENIED in part, as set forth above.

3. The state court plaintiffs' motion to intervene, Dkt. 163, is DENIED.

4. The SEC's motion for appointment of a receiver, Dkt. 159, is GRANTED. The court will enter the modified receivership order shortly.

5. The parties' joint motion for temporary stay of ancillary state court litigation, Dkt. 186, is DENIED as moot.

Entered October 20, 2016.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge