## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

———————————————————————

| | |
|---|---|
| **UNITED STATES SECURITIES** | : |
| **AND EXCHANGE COMMISSION,** | : |
| | : |
| **Plaintiff,** | : |
| | :   **Case No.:  3:15-cv-45-jdp** |
| **v.** | : |
| | : |
| **THE ESTATE OF LOREN W.** | : |
| **HOLZHUETER and ISC, INC.** | : |
| **(d/b/a Insurance Service Center),** | : |
| | : |
| **Defendants, and** | : |
| | : |
| **HONEFI, LLC, ARLENE HOLZHUETER,** | : |
| **and AARON HOLZHUETER,** | : |
| | : |
| **Relief Defendants.** | : |

——————————————————  :

### ORDER APPOINTING RECEIVER

**WHEREAS,** on January 21, 2015, Plaintiff the United States Securities and Exchange

Commission (the "Commission") sued Defendants Loren W. Holzhueter and ISC, Inc. ("ISC"),

alleging that they were engaged in an ongoing Ponzi scheme that raised at least $10.4 million

from investors.  (Docket No. 1.)  The Complaint included Honefi, LLC ("Honefi") as a Relief

Defendant.  Following Loren W. Holzhueter's death, the Commission filed an Amended

Complaint that: (a) substituted the Estate of Loren W. Holzhueter (the "Estate") as a defendant;

and (b) added Aaron Holzhueter and Arlene Holzhueter (Loren W. Holzhueter's son and wife) as

relief defendants (Docket No. 53);

**WHEREAS,** in the Complaint and Amended Complaint, the Commission alleges that

Loren W. Holzhueter and ISC raised millions of dollars from investors beginning in March 2000

through November 2014 through fraudulent means.  (Docket Nos. 1 and 53.)  The Commission

contends that Loren W. Holzhueter and entities that he owned or controlled, including ISC and

Honefi, obtained more than $26 million from investors beginning in at least 1995 in connection

with this scheme; that ISC made repayments to investors totaling at least $12 million; and that investors still have net losses of at least $13.9 million.  Individuals who provided funds to Loren W. Holzhueter or entities that he owned or controlled from 1995 to 2015 pursuant to the fraudulent means alleged in the Complaint and Amended Complaint are hereinafter referred to as "Investors";

WHEREAS, on November 2, 2015, the Court entered partial judgments by consent against Defendants ISC and the Estate in which it ordered that any award of civil penalties and disgorgement of ill-gotten gains would be determined by the Court upon the Commission's Motion for Remedies (Docket Nos. 80 and 81);

WHEREAS, on June 20, 2016, the Commission filed an unopposed motion seeking entry of consent and final judgments against the Estate, Honefi, and Arlene Holzhueter in which they consented to entry of final judgment which, among other relief, requires them to disgorge Loren W. Holzhueter's ill-gotten gains by relinquishing: (a) the proceeds from the policies insuring Loren W. Holzhueter's life (the "Life Insurance Proceeds"); (b) loans made or money provided to ISC; (c) any ownership interest in ISC; (d) any ownership interest in Honefi; and (e) Loren W. Holzhueter's marital interest in certain bank accounts held jointly with Arlene Holzhueter (Docket Nos. 145-1, 145-3, 145-4, 145-6);

WHEREAS, on October 20, 2016, the Court entered final judgments against Defendant the Estate and Relief Defendants Honefi and Arlene Holzhueter;

WHEREAS, the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of (i) distributing the Life Insurance Proceeds which are deposited with the registry of the Court in a manner that treats all Investors equitably; (ii) marshaling, preserving, selling, and distributing all assets of Relief Defendant Honefi; and (iii) selling and distributing all assets of Defendant ISC in

a manner designed to maximize the value to creditors (including Investors);

**WHEREAS**, the Court finds that, based on the record in these proceedings, there is clear and convincing evidence that there will be irreparable injury unless a receiver is appointed by the Court;

**WHEREAS**, the Court has broad, equitable discretion to order the relief set forth herein; and

**WHEREAS,** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Life Insurance Proceeds, ISC, and Honefi, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.     Appointment of Receiver**

1.     Until further order of this Court, Michael S. Polsky is hereby appointed to serve without bond as receiver (the "Receiver") for the Life Insurance Proceeds, Honefi, and ISC.

**II.     Distribution of Assets**

2.     As set forth in greater detail below, the Receiver is authorized, empowered, and directed to develop a plan for:

      a.   The distribution of the Life Insurance Proceeds and other funds deposited with the registry of the Court to Investors ("Phase 1 Distribution"); and

      b.   The fair, reasonable, and efficient recovery and sale of ISC and Honefi and/or their assets (collectively, the "Receivership Property") and its distribution ("Phase 2 Distribution").

3.     Arlene Holzhueter, Aaron Holzhueter, and the present or former officers, directors, employees, agents, managers, trustees, attorneys, accountants, affiliates, contractors,

and/or partners of Honefi and ISC are hereby ordered to assist the Receiver in fulfilling his duties and obligations as set forth herein.  They must respond promptly and truthfully to all requests for information and documents from the Receiver.

4.     The Receiver is authorized to engage and employ, with the prior approval of the Court, any individuals or entities the Receiver deems reasonably necessary to assist with his duties described herein ("Retained Personnel"); however, the Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel, the Life Insurance Proceeds, and the Receivership Property.

## III.    Life Insurance Proceeds

5.     Within 21 days of the entry of this Order, and with prior approval of the Commission, the Receiver shall draft and submit to the Court a Phase 1 Distribution Plan for the Life Insurance Proceeds and other liquid assets.  The Phase 1 Distribution Plan shall:

    a.  Provide for *pro rata* compensation to Investors based on their net principal loss;

    b.  Include an initial determination of the claim amount for each Investor, which will be determined by summing the amounts invested less any repayments that the Investor received (the "Initial Claim Determination").  The Receiver shall rely on the Initial Claim Determinations to be provided by the Commission for each Investor;

    c.  Include a procedure for notifying Investors of the amount of his or her Initial Claim Determination ("Claim Notice").  The Claim Notice must also include instructions and the deadline for Investors to object to their Initial Claim Determination (a "Claim Objection").  The Investor shall bear the burden of providing necessary documents to support his or her Claim Objection.  Claim

Objections must be submitted to the Receiver and the Commission within 30 days of the mailing of the Claim Notice.

d.  Include a procedure for resolving Claim Objections, including requesting additional documents from Investors or further analysis of records.  The Receiver shall confer with the Commission to resolve Claim Objections, but the Receiver shall make final determinations concerning Claim Objections. All Claim Objections must be resolved within 14 days of receipt.

e.  Include a final list of claim determinations ("Final Claim Determinations"), including, for each Investor, an indication as to whether there was a Claim Objection to the Initial Claim Determination, and any adjustment made by the Receiver as a result.  The Final Claim Determination will also include the amount of the *pro rata* distribution that each Investor will receive from the Phase 1 Distribution.  The Receiver shall file the Final Claim Determinations with the Court within seven days of resolving the last timely received Claim Objection.

f.  Provide for *pro rata* compensation to counsel for ISC for its fees and expenses, at the same rate as the Investors. The Receiver and the Commission shall review the requested fees and submit any objections or a statement of approval to the Court by the objection deadline in ¶ 6.

6.      Defendants, Relief Defendants, or other interested parties (other than Investors) may object to the Phase 1 Distribution Plan or to the Initial Claim Determinations ("Objections").  All Objections must be filed with the Court within 14 days from the service and filing of the Phase 1 Distribution Plan.  The Receiver and/or the Commission shall have seven days to respond to any Objection.  Prior to filing an Objection, the objecting party shall meet and

confer with the Receiver and the Commission to attempt to resolve the Objection informally. This Court shall retain jurisdiction over, and shall adjudicate, any Objection that is not resolved informally.

7. Within 14 days of the entry of an order approving the Phase 1 Distribution Plan, the Receiver shall:

    a.  Mail Claim Notices to Investors;

    b.  Obtain a letter from the Clerk of Court stating the amount of funds held in the Court's registry for this case, establish a non-interest bearing checking account or accounts as may be necessary at institutions insured by the Federal Deposit Insurance Corporation (the "Receiver's Accounts"), and request the Clerk to transfer those funds to the Receiver in trust for deposit into the Receiver's Accounts.

8. The Receiver will make *pro rata* distributions to Investors and counsel for ISC from the Receiver's Accounts within 14 days of resolving the last timely received Claim Objection. The distribution check shall be accompanied by the Final Claim Determination for the Investor and the amount of any remaining claim (the "Remaining Claim"), calculated by subtracting the distribution amount from the Final Claim Determination.

9. The Commission, Defendants, and Relief Defendants are hereby ordered to cooperate with the Receiver and to promptly answer his requests to minimize expenses incurred by the Receiver. Such cooperation includes, but is not limited to, providing Investor contact information and assisting with the contents of the notice provided to Investors.

10. With prior approval of the Court, the Receiver may, if necessary, engage a professional to fulfill all income tax reporting requirements of the Life Insurance Proceeds and other liquid assets that are distributed pursuant to the Phase 1 Distribution (the "Tax

Administrator").

11.     With prior approval of the Court and the Commission, the Receiver, the Tax Administrator, and the Retained Personnel may recover no more than $200,000, in aggregate, of their reasonable costs and fees associated with executing the tasks described in paragraphs 5-8 and 10, above, from the Life Insurance Proceeds.  To the extent that the reasonable costs and fees incurred by the Receiver, the Tax Administrator, and the Retained Personnel associated with executing the tasks described in paragraphs 5-8 and 10, above, exceed $200,000, they may recover those fees, with prior approval of the Court and the Commission, from assets or funds of ISC or Honefi or from the Phase 2 Distribution.  Under no circumstances shall the Receiver, or any of his Retained Personnel described herein, recover any costs or fees unrelated to the tasks described in paragraphs 5-8 and 10, above, from the Life Insurance Proceeds.

12.     Aside from the funds discussed in paragraph 11, above, no claimant besides the Investors and counsel for ISC shall receive funds from the Phase 1 Distribution.

13.     With prior approval of the Court and the Commission, the Receiver may defend against claims against Life Insurance Proceeds.  However, the Commission is also authorized to defend against such claims.

## IV.     Honefi

14.     Pursuant to the final judgments entered against them, Defendant the Estate and Relief Defendant Arlene Holzhueter are directed to effect all corporate formalities necessary to transfer their ownership interests in Honefi to the Receiver to hold in trust to administer according to the terms of this Order or any subsequent order of the Court.

15.     The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of Honefi under applicable state and federal law, by the governing charters, by-laws, articles, and/or agreements,

in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692, and Fed. R. Civ. P. 66.

16.     No person holding or claiming any position of any sort with Honefi shall possess any authority to act by or on behalf of Honefi.  The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, and other agents of Honefi are hereby dismissed and the powers of any general partners, directors, and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to Honefi's operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.  The Receiver shall assume and control the operation of Honefi and may pursue and preserve all of its claims.

17.     The Receiver has the following powers and duties with respect to Honefi:

a.     To use reasonable efforts to determine the nature, location, and value of all assets and real property which Honefi owns, possesses, has a beneficial interest in, or controls, and may rely on information provided to him by the Commission and/or Honefi's former officers and directors in so doing;

b.     To take custody, control, and possession of all the funds, property, premises, leases, and other assets of, or in the possession or under the direct or indirect control of, Honefi; to manage, control, operate, and maintain Honefi including real estate it owns; to use income, earnings, rents, and profits for the purpose of managing, controlling, operating, and maintaining Honefi and its assets;

c.     To sell, with the prior approval of the Court, Honefi's real property, either in conjunction with a sale of ISC or separately, to maximize return to Investors and Honefi's creditors;

d.     To transfer, compromise, or otherwise dispose of any of Honefi's property

other than real estate, without further order of the Court in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to maximize return to Investors and Honefi's creditors;

e.     If the Receiver is unable to locate a suitable purchaser for all or part of Honefi or its assets within 180 days of the entry of this Order, the Receiver may: (a) submit a request to the Court for additional time to locate a suitable purchaser; or (b) with prior approval of the Court and the Commission, wind down Honefi or the portions of Honefi or its assets that it is unable to sell;

f.     With prior approval of the Court as discussed below, to distribute the proceeds from the sale of Honefi and/or its assets to Investors and its creditors;

g.     To make such payments and disbursement from additional funds so taken into his custody, control, and possession, or thereafter received (other than the Life Insurance Proceeds), and to incur such expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

h.     With the prior approval of the Court and the Commission, to bring legal actions based on law or equity in any state, federal, or foreign court as he deems reasonably necessary or appropriate in discharging his duties as Receiver;

i.     To take such action as is necessary and appropriate to prevent the dissipation or concealment of any funds or assets or for the preservation of any such funds and assets of Honefi;

j.     To take any action which could be taken by the officers, directors, partners, members, shareholders, and trustees of Honefi; and

k.   To take such other action as may be approved by this Court.

**Access to Information**

18.     Arlene Holzhueter and Aaron Holzhueter, and the present or former officers, directors, employees, agents, managers, trustees, attorneys, accountants, affiliates, contractors, and/or partners of Honefi, ISC, or Quality Tax and Accounting Services LLC ("Quality Tax") (to the extent that they provided services to Honefi or have possession, custody, or control of Honefi's business records) are hereby ordered and directed to preserve and, at the Receiver's request, turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, Honefi; such information shall include but not be limited to books and records, documents or instruments, electronically stored information ("ESI"), computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

19.     All persons and entities having control, custody, or possession of Honefi's assets or property are hereby directed to turn such property over to the Receiver.  To the extent that Honefi's ESI is stored or maintained on devices or equipment owned by persons or entities other than Honefi, such persons or entities must preserve Honefi's ESI and provide a copy of such ESI to the Receiver.

20.     Within 10 days of the entry of this Order, Honefi shall file with the Court and serve upon the Receiver and the Commission a sworn statement listing:

a.   The identity, location, and estimated value Honefi's real and personal property;

b. Every account at every bank, brokerage firm, or other financial institution in the name of Honefi, over which Honefi has signatory authority, or in which Honefi has an ownership interest, and the current balance of each account;

c. All credit, bank, charge, debit, or other deferred payment card issued to or used by Honefi, including but not limited to the issuing institution, the card or account number, all persons or entities to which a card was issued and/or with authority to use a card, and the balance of each account and/or card as of the most recent billing statement;

d. All employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of Honefi; and

e. The names, addresses, and amounts of claims of all known creditors of Honefi.

21.     Within 10 days of the entry of this Order, Honefi shall provide to the Receiver and the Commission copies of Honefi's federal income tax returns for the past five years with all relevant and necessary underlying documentation.

22.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, Honefi that receive actual notice of this Order by personal service, facsimile transmission, or otherwise shall:

a. Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of Honefi except upon instructions from the Receiver;

b. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control

without the permission of this Court;

c.   Within five business days of receipt of that notice, file with the Court and
serve on the Receiver and counsel for the Commission a certified statement
setting forth, with respect to each such account or other asset, the balance in
the account or description of the assets as of the close of business on the date
of receipt of the notice; and

d.   Cooperate expeditiously in providing information and transferring funds,
assets, and accounts to the Receiver or at the direction of the Receiver.

23.     The Receiver is authorized to take immediate possession of all real property of
Honefi, wherever located, including but not limited to all ownership and leasehold interests and
fixtures.  The Receiver has the authority to permit any tenants of Honefi's real property to
continue to use such property.

**Notice to Third Parties**

24.     The Receiver – after receiving the information identified in ¶ 20(d) and (e) above
– shall promptly give notice of his appointment to all known officers, directors, agents,
employees, shareholders, creditors, debtors, managers, and general and limited partners of
Honefi, as the Receiver deems necessary or advisable to effectuate the operation of the
receivership.

25.     All persons and entities owing any obligation, debt, or distribution with respect to
an ownership interest to Honefi shall, until further ordered by this Court, pay all such obligations
in accordance with the terms thereof to the Receiver, and his receipt for such payments shall
have the same force and effect as if Honefi had received such payment.

26.     In furtherance of his responsibilities in this matter, the Receiver is authorized to
communicate with, and/or serve this Order upon, any person, entity, or government office that he

deems appropriate to inform them of the status of this matter and/or the financial condition of Honefi.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

27.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to Honefi shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

**Managing Assets**

28.     The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent property of Honefi.

29.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Honefi" together with the name of this action.

30.     The Receiver shall take all necessary steps to enable these funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

**V.     ISC**

31.     Effective immediately, the Receiver assumes the responsibilities, powers, and duties of the Independent Monitor as set forth in paragraphs 4 through 14 of the Order Appointing Independent Monitor.  (Docket No. 25.) The previously appointed Independent Monitor, David Omachinski (Docket No. 30), is dismissed and relieved of his duties.  The Receiver is authorized to compensate the prior Independent Monitor for up to 10 hours of consulting time.  ISC shall compensate the prior Independent Monitor for up to 10 hours of these services as directed by the Receiver. The Receiver may request authorization from the Commission to retain the Independent Monitor for further consulting time if needed.

32.     The Receiver shall have the following additional responsibilities, powers, and duties with respect to ISC:

a.   To enter into a consent judgment with the Commission to settle the Commission's claims against ISC in this action;

b.   To use reasonable efforts to determine the nature, location, and value of all assets and property that ISC owns, possesses, has a beneficial interest in, or controls; the Receiver may rely on information provided to him by the Commission and/or ISC employees, officers, and directors in carrying out this duty;

c.   To sell ISC and/or its assets, either in whole or in part, free of liens, with prior approval of the Court, to maximize value and funds available for distribution to ISC's creditors and Investors;

d.   If the Receiver is unable to locate a suitable purchaser for all or part of ISC or its assets within 180 days of the entry of this Order, the Receiver, with prior approval of the Court and the Commission, may wind down ISC or the portions of ISC or its assets that it is unable to sell;

e.   To distribute the proceeds from the sale of ISC and/or its assets to Investors, and to make legally required payments to creditors, employees, and agents, as described below;

f.   To make such payments and disbursement from additional funds so taken into his custody, control, and possession, or thereafter received, other than the Life Insurance Proceeds, and to incur such expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

g.  To take such action as necessary and appropriate to prevent the dissipation or concealment of any funds or assets or for the preservation of any such funds and assets of ISC;

h.  To evaluate past payments by ISC to Investors and to recommend to the Court clawback of payments if such would be equitable and beneficial to the Investors;

i.  To take such other action as may be approved by this Court.

**<u>Access to Information</u>**

33.    Arlene Holzhueter, Aaron Holzhueter, the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of ISC, Honefi, or Quality Tax (to the extent that they provided services to ISC or have possession, custody, or control of ISC's business records) are hereby ordered and directed to preserve all paper and electronic information of, and/or relating to ISC; such information shall include but not be limited to books and records, documents or instruments, ESI, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.  The Receiver is authorized to have access to and to review this information.  The Receiver, in his discretion, may reach an agreement with ISC employees about the retention of documents related to the day-to-day operations of ISC.

34.    Within 14 days of the entry of this Order, ISC shall serve upon the Receiver and the Commission a sworn statement listing: (a) the identity, location, and estimated value of all of ISC's property; (b) all ISC employees (and job titles thereof), other personnel, attorneys,

accountants, and any other agents or contractors; and, (c) the names, addresses, and amounts of claims of all known creditors of ISC.

35.     Within 14 days of the entry of this Order, ISC shall provide to the Receiver and the Commission copies of ISC's federal income tax returns for the prior five years with all relevant and necessary underlying documentation.

36.     All banks, brokerage firms, financial institutions, and other persons or entities that have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of ISC, directly or indirectly, that receive actual notice of this Order by personal service, facsimile transmission, or otherwise shall:

> a.   Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever;
>
> b.   Within five business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and
>
> c.   Cooperate expeditiously in providing information to the Receiver or at the direction of the Receiver.

**<u>Notice to Third Parties</u>**

37.     The Receiver – after receiving the information identified in ¶ 34 (b) and (c) – shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of ISC, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

38.     In furtherance of his responsibilities in this matter, the Receiver is authorized to

communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of ISC. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

**Operations of ISC**

39.     To preserve the value of ISC for the benefit of creditors (including Investors), the Receiver, in his discretion, may take all necessary and reasonable steps to ensure that ISC continues operations until it can be sold. This includes the power to retain current management and employees, and to incur reasonable expenses in the ordinary course of business (including payment of salaries in the ordinary course). For payments by ISC outside of the ordinary course – including payment of outside counsel and other professional fees – the Receiver and the Parties shall follow the procedures outlined in the Court's Order Appointing Independent Monitor at ¶¶ 6-8. (Docket No. 25.)

**VI.     Phase 2 Distribution**

40.     As soon as possible after negotiating an agreement in principle to sell ISC, Honefi, and/or their assets, and with prior approval of the Commission, the Receiver will file a motion (the "Sale Motion") disclosing the terms of the sale to the Court and request the entry of an order: (1) authorizing the sale; (2) authorizing the winding-down of any portions of ISC and/or Honefi that are not subject to the sale; and (3) requiring that creditors of ISC and Honefi (other than Investors) submit claims to the Receiver along with supporting documentation regarding the nature of their claim, the amount due, and any related security interest, within 14 days of the entry of the order (the "Sale Order").

41.     Defendants, Relief Defendants, Investors, or other interested parties may object to

the proposed sale of ISC, Honefi, and/or their assets.  All such objections must be filed with the Court within 14 days of the entry of the Sale Motion.  The Receiver and/or the Commission shall have seven days to respond to any such objection.  This Court shall adjudicate these objections.

42.     Within 14 days of the entry of the Sale Order, the Receiver shall establish non-interest bearing checking accounts as necessary to ensure that all funds he receives from the sale(s) are insured by the Federal Deposit Insurance Corporation.  If ISC and Honefi are sold pursuant to separate agreements, the Receiver shall establish separate accounts for the proceeds of ISC's and Honefi's sales.

43.     Within 14 days of the entry of the Sale Order, the Receiver shall draft, and with prior approval of the Commission, submit to the Court a Phase 2 Distribution Plan.  The Phase 2 Distribution Plan shall include the method for allocating funds obtained from the sale or sales of Honefi, ISC, and/or their assets, as well as any funds that the Receiver received from operating Honefi, a detailed description of the distribution process, and the timeline of the distribution.  It will also include a list of the Remaining Claims for each Investor.

44.     Defendants, Relief Defendants, Investors, or other interested parties may object to the Phase 2 Distribution Plan ("Phase 2 Objection").  All Phase 2 Objections must be filed with the Court within 14 days of the filing of the Phase 2 Distribution Plan.  The Receiver and/or the Commission shall have seven days to respond to any Objection.  This Court shall adjudicate Phase 2 Objections.

45.     Within 14 days of the order approving the Phase 2 Distribution Plan, the Receiver will begin making distributions.

## VII.   Injunction Against Interference with Receiver

46.     Arlene Holzhueter, Aaron Holzhueter, any officer, director, employee, or partner of ISC or Honefi, and all persons receiving notice of this Order by personal service, facsimile, or

otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

a. Interfere with the Receiver's duties as authorized by this Order; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon the Life Insurance Proceeds, Honefi, or ISC or their property;

b. Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

c. Dissipate or otherwise diminish the value of the Life Insurance Proceeds, Honefi, or ISC or their property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying property (except with respect to ISC, which may do so in the ordinary course of its business), enforcing judgments, assessments, or claims against property, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date of) any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by ISC or Honefi or which otherwise affects any of their property; or

d. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Life Insurance Proceeds, ISC, or Honefi.

47.     Arlene Holzhueter, Aaron Holzhueter, and all officers, directors, employees, agents, or partners of ISC or Honefi shall cooperate with and assist the Receiver in the performance of his duties.

48.     The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII.   Stay of Litigation

49.     As set forth in detail below, the following proceedings – excluding the instant proceeding, all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, and *In re Aaron Holzhueter*, Case No. 3-16-13134-rdm (Bankr. W.D. Wis.) – are stayed until further order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) the Life Insurance Proceeds; (c) property owned by ISC or Honefi, wherever located; (d) ISC or Honefi, including subsidiaries and partnerships; (e) any of ISC's or Honefi's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

50.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

51.     All Ancillary Proceedings are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further order of this Court.  Further, as to a cause of action accrued or accruing in favor the Life Insurance Proceeds,

ISC, or Honefi against a third person or party, any applicable statute of limitations is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX.   Bankruptcy Filing

52.    The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for ISC or Honefi, if he believes that such action is necessary to maximize the funds to be returned to Investors.  If ISC or Honefi is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate such entity as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

53.    The stay of litigation set forth in Section VIII, above, bars any person or entity, other than the Receiver, from placing either ISC or Honefi in bankruptcy proceedings.

## X.   Liability of Receiver

54.    Until further order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

55.    The Receiver and his Retained Personnel, acting within scope of such agency, are entitled to rely on all outstanding rules of law and orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

56.    This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

57.    In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XI.    Recommendations and Reports

58.    Within 30 days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of ISC and Honefi, and once authorized by the Court, Phase 1 and Phase 2 Distributions (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all of ISC's and Honefi's property, the funds remaining from the Phase 1 and Phase 2 Distributions, and the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of ISC and Honefi.

59.    The Quarterly Status Report shall contain the following:

a.    A summary of the operations of the Receiver;

b.    The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

c.    A schedule of all of the Receiver's receipts and disbursements (to be attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

d.    A description of all known property of ISC and Honefi, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

e.    A description of liquidated and unliquidated claims held by ISC and Honefi, including the need for forensic and/or investigatory resources; approximate

valuations of claims; and anticipated or proposed methods of enforcing such

claims (including likelihood of success in reducing the claims to judgment and

collecting such judgments);

f.   A list of all known creditors with their addresses and the amounts of their

claims;

g.   The Receiver's recommendations for a continuation or discontinuation of the

receivership and the reasons for the recommendations.

60.   On the request of the Commission, the Receiver shall provide the Commission

with any documentation that the Commission deems necessary to meet its reporting

requirements, that is mandated by statute or Congress, or that is otherwise necessary to further

the Commission's mission.

## XII.   Fees, Expenses, and Accountings

61.   Subject to paragraphs 11 and 61-66, the Receiver need not obtain Court approval

prior to the disbursement of funds for expenses in the ordinary course of the administration and

operation of the receivership.  Further, prior Court approval is not required for payments of

applicable federal, state, or local taxes.

62.   The Receiver and Retained Personnel are entitled to reasonable compensation and

expense reimbursement from ISC and Honefi, subject to the limitations set forth in paragraph 11

above, as described in the "Billing Instructions for Receivers in Civil Actions Commenced by

the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the

Receiver.  Such compensation shall require the prior approval of the Court.

63.   Within 45 days after the end of each calendar quarter, the Receiver and Retained

Personnel shall apply to the Court for compensation and expense reimbursement from ISC and

Honefi (the "Quarterly Fee Applications").  At least 30 days prior to filing each Quarterly Fee

Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

64.   All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

65.   Quarterly Fee Applications may be subject to a holdback in the amount of 20 percent of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

66.   Each Quarterly Fee Application shall:

a.   Comply with the terms of the Billing Instructions agreed to by the Receiver; and

b.   Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of ISC and Honefi; and (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from ISC or Honefi funds, or funds generated during the receivership, or any sharing thereof.

67.   At the close of the receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

Entered October 20, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge